UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 1 2 2017 ★

BROOKLYN OFFICE

-------------------------------------------------------X

SEAN PATTERSON, on behalf of himself and
All others similarly situated,

                Plaintiff,

    - against -

PREMIER CONSTRUCTION CO. INC., and
SAEED M. ANJUM,

                Defendants.

-------------------------------------------------------X

**MEMORANDUM & ORDER**

15-cv-00662 (SLT) (ST)

**TOWNES, United States District Judge,**

Before the Court is the Parties' Joint Motion for Preliminary Certification and Class

Settlement Approval. (ECF No. 31). The motion is **DENIED without prejudice** to reurge in

the manner addressed below. Additionally, the hearing set for January 18, 2017, is hereby

**ADJOURNED** without rescheduling.

## FACTUAL AND PROCEDURAL BACKGROUND

Putative Class Plaintiff Sean Patterson initiated this action on February 10, 2015, alleging

FLSA, NYLL, and related city law violations against his employer, Premier Construction.[1] (*See*

ECF No. 1). He primarily alleges that he and others similarly situated regularly worked eight

hours a day for six days a week but never received overtime pay (1 ½ regular pay) for their sixth

day.

---

[1] Roughly a month later he filed an Amended Complaint adding Saeed M. Anjum, the owner of Premier
Construction, as an additional defendant. (ECF No. 4).

On August 1, 2016, the parties participated in a mediation session conducted by the Honorable Judge John P. DiBlasi (formerly of the Commercial Division of the N.Y. State Supreme Court). (*See* ECF No. 32 at 2). At that mediation session the parties reached a "settlement in principle of all disputed issues between the parties[,]" and later "negotiated the specific terms of the Settlement Agreement now being put forward before the Court" without DiBlasi's involvement. (ECF No. 33. ¶¶ 9-10). Those additional terms are as follows.

The entire amount—presumably the "agreement in principle" arrived at during mediation—is nominally $290,000. This $290,000 "Settlement Fund," as it is defined in the Settlement Agreement, is the "maximum amount that can be paid by Defendants pursuant to th[e] Agreement." The proposed agreement allocates $150,000 of that sum to "satisfy three enumerated costs":

> (i)     Class Counsel fees not to exceed $96,666.00 (which equals 1/3 of the overall $290,000 Settlement Fund) and for which Plaintiff's counsel will petition the Court without opposition from Defendants (ECF No. 33-1, ¶3.2),
>
> (ii)     Claims administrator fees of $25,000 (ECF No. 33-1, ¶ 2.5), and
>
> (iii)     $25,000 in distinct "settlement checks" and "Enhancement Awards" to both Plaintiff Sean Patterson and Mr. Moises Rosario. Specifically, Patterson will receive a $15,000 "settlement check" in addition to a $5,000 "Enhancement Award." (ECF No. 33-1, ¶ 3.1(A)(a)). Moises Rosario will receive a $4,000 "settlement check" in addition to a $1,000 "Enhancement Award." (*Id.* ¶ 3.1(A)(b)).

Thus, more than half of what the parties term the "Settlement Fund" is allocated to expenses, fees, and isolated payments to Plaintiff and Mr. Rosario.

The remaining $140,000 is reserved for individual class members, who will receive either $1,000 or $2,000 dollars if they return timely and valid Claim Forms and do not opt out of the

settlement. (ECF No. 33-1, ¶ 3.1 *en toto*). Specifically, $1,000 will be paid to opt-in members who worked 12 months or less, and $2,000 will be paid to those who worked more than 12 months. (ECF No. 33-1, ¶ 3.1(A)). Of course, any class members who do not specifically opt-out or -in will receive nothing and their claims will be permanently extinguished. Notably, this $140,000 tranche is "reversionary," meaning that any undispersed amounts will revert to Defendant after 150 days of any final approval of the settlement. (*See* ECF No. 33-1, ¶ 3.1(G)(iii)).

## DISCUSSION

The class action settlement approval process customarily has two stages. *See* FJC Manual for Complex Litigation (4th) ("MCL"), *infra*. First the court preliminarily certifies the class and approves the settlement terms, class notices, and administrative procedures proposed by the parties. *See, e.g.*, MCL (4th) § 21.632. Second, the court holds a final settlement hearing to determine whether the settlement is "fair, reasonable, and adequate" and then grants or denies final approval of the settlement and certification of the class. Fed. R. Civ. P. 23(e)(2).

The initial issue in a preliminary review is whether the proposed settlement agreement is "fair, adequate and reasonable and not a product of collusion." *Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 130 (E.D.N.Y. 2015) (Weinstein, J) (citations omitted.) As a general matter, "[p]reliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009) (citing, e.g., MCL § 30.41); *see also In re*

*Traffic Executive Ass'n–Eastern Railroads*, 627 F.2d 631, 634 (2d Cir.1980) (stating that preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.") In ascertaining whether a settlement falls "within the range of possible approval, courts will compare the settlement amount to the relief the class could expect to recover at trial." Newberg on Class Actions ("Newberg") § 13:15 (5th ed.) (quotation marks and citations omitted).

While court approval is required, the "judge cannot rewrite the agreement." MCL § 21.611; *see also Evans v. Jeff D.*, 475 U.S. 717, 726–27 (1986) ("[Under] Rule 23(e) . . . the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.") Despite this limitation, it is widely recognized that courts can condition preliminary approval without rewriting agreements. Indeed, as the Second Circuit has explained, "a dissatisfied judge may, with circumspection, 'edge' the parties in what [s]he believes to be the right direction" without directly modifying the proposed settlement directly. *Plummer v. Chem. Bank*, 668 F.2d 654, 656 n. 1 (2d Cir. 1982) (citations omitted); *but see In re Warner Commun. Sec. Litig.*, 798 F.2d 35, 37 (2d. Cir. 1986) ("[I]t is not a district judge's job to dictate the terms of a class settlement.")

To that end, many courts deny preliminary approval " 'without prejudice,' providing guidance to the parties as to the problems that concern them and giving the parties the opportunity to amend the agreement." Newberg § 13.12 (citations omitted). As the author of the MCL has similarly noted, "[i]t is not uncommon for the court to deny preliminary approval with specific guidance to the parties as to the factors driving that decision and explicitly specifying that the denial is without prejudice and is subject to being renewed in a modified proposed settlement." MCL (4th ed. 2016) 448, Author's Comments to § 21.63); *see also Romstadt v.*

*Apple Computer, Inc.*, 948 F. Supp. 701, 707 (N.D. Ohio 1996) (noting that a "proposed agreement is more readily alterable" and that "[t]he choice facing the court and parties is not limited to the binary alternatives of approval or rejection.") While courts have denied preliminary approval based on a finding that the proposed settlement value is outside the range of reasonableness, "more commonly their denial is based on the settling parties' failure to furnish the court with enough information and evidence to enable it to rationally assess the reasonableness of the proposed consideration." Newberg § 13.12 (citations omitted); *see also* MCL § 21.631 (courts should ask "counsel to provide complete and detailed information about the factors that indicate the value of the settlement."); *Custom Led, LLC v. eBay, Inc, No.* 12-CV-00350-JST, 2013 WL 4552789, at *9 (N.D. Cal. Aug. 27, 2013) (denying preliminary approval without prejudice where the parties provided "no information as to the class members' potential range of recovery."); *Galloway v. Kansas City Landsmen*, LLC, No. 4:11-1020-CV-W-DGK, 2013 WL 3336636, at *4 (W.D. Mo. July 2, 2013) (Courts should " 'insist that the parties present evidence' that would at least enable it to make a 'ballpark valuation' before deciding whether to approve a settlement.") (quoting *Synfuel Technologies, Inc. v. DHL Express*, 463 F.3d 646, 653 (7th Cir. 2006); *In re Microsoft Corp. Antitrust Litig.*, 185 F. Supp. 2d 519, 526 (D. Md. 2002) (denying preliminary certification where record did not disclose enough information to allow for meaningful assessment of potential damages.)

Here, the parties have provided virtually no information regarding class members' potential range of recovery and their proposed settlement must be denied on that basis. Plaintiff's brief provides only conclusory statements regarding the value of each claim. Counsel asserts, for instance that the entire $290,000 fund is "fair and reasonable" because (i) without settlement "the Parties expect extensive additional motion practice" over decertification and

unidentified dispositive issues, (ii) trial will necessitate "extensive testimony," and (iv) the

potential for appeal. (ECF No. 32 at 14-15). The same, of course, holds true of virtually every

class action. Counsel also asserts that "[a] trial on the merits could involve significant risks to

Claimants because of the fact-intensive nature of measuring damages under the FLSA and

NYLL, and in light of the substantial defenses available to Defendants as to the measure of

damages," (*id.* at 16), but provides no information regarding those risks or defenses. Yet both

parties appear to have ample information with which to predict a relatively narrow range of

damages.

Indeed, the parties represent in the recitals prefacing their Settlement Agreement that they

"have engaged in and *completed* discovery during the course of" this litigation. (ECF No. 33-1,

¶ 1) (emphasis added). In an affidavit accompanying the instant motion, Plaintiff's counsel

attests that "[i]n preparation for the mediation session, our office spent significant time and

resources reviewing the relevant discovery, evaluating the case, and summarizing the *damages of*

*the seventy-five putative class members*." (ECF 33 at ¶ 8) (emphasis added). He also claims to

have provided the mediator with his analysis of:

     (1) the potential liability if the case were to proceed;
     (2) the relative strengths and weaknesses of the parties' respective positions; [and]
     (3) possible exposure and litigation outcomes.

(ECF No 33, ¶ 8). Defendants likely have records of each class members' work schedule and

hours worked, considering that they are required by law to maintain them. *See, e.g.*, 29 C.F.R.

Part 516. In short, discerning a range of damages is comparatively straightforward in this case, [2]

---

[2] Counsel's contention that continued litigation will lead to a "battle of experts" concerning damages "whose outcome is impossible for the court to predict" is a red herring. (ECF No. 32 at 16). This quote is lifted from two securities cases from the Southern District, *In re RJR Nabisco Sec. Litig.*, 1992 WL 210138 (S. D.N. Y. Aug. 24, 1992) and *In re Warner Commun. Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. Aug. 20 1985), which presented exponentially more complex and theoretical damages issues. Here, in contrast, damages are essentially a function of the base rate of pay and the amount of overtime allegedly worked.

and the parties have apparently already provided a detailed analysis on "the damages of the seventy-five putative class members" to the mediator.[3]

For these reasons the present Motion is **DENIED without prejudice**. Any future motions for preliminary approval must evaluate a range of reasonable recoveries, drawing from and providing:

(i)     Both parties' analyses provided to the mediator.

(ii)    The aforementioned summary of "the damages of the seventy-five putative class members."

(iii)   Any and all information either party has regarding how many of the seventy-five putative class members worked for Premier for more than one year.

(iv)    An explanation of why Plaintiff's brief only mentioned the $5,000 and $1,000 "service awards" to Plaintiff and Rosario, respectively, and failed to mention the much larger $15,000 and $4,000 "settlement checks" called for under the Settlement Agreement. (*Compare* ECF No. 32 at 6 *with* ECF No. 33-1 at ¶3.1(A)(b)).

(v)     A justification for the $25,000 in payments to Plaintiff and Rosario and an explanation of how those sums were reached.

---

[3] To the extent counsel would argue that this settlement enjoys a presumption of reasonableness because it followed mediation, *see, e.g.*, 2 McLaughlin on Class Actions § 6:7 (13th ed.) ("[a] settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion"), he is mistaken. It appears that the mediator simply negotiated the overall $290,000 sum before the parties allocated less than half that sum to the class members at large. Counsel's affidavit states that the parties reached a "settlement in principle of all disputed issues between the parties" during mediation; they later "negotiated the specific terms of the Settlement Agreement now being put forward before the Court" without DiBlasi's involvement. (ECF No. 33. ¶¶ 9-10). Those additional terms included "the expected amounts to be paid to the participating class members" and "the manner of handling unclaimed settlement funds[,]"(*id.*), which, in blunter terms, is the money simply reverting to defendants, *cf. In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 827 F. 3d 223 (2d Cir. 2016) (reversing approval of settlement that followed extensive mediation).

The Court also notes the following two deficiencies in the proposed settlement which, if retained in future proposed agreements, must be addressed by brief. First, the so-called "free-sailing" provision whereby the defendant agrees not to contest class counsel's fee petition is "troubling" and unlikely to be approved alongside the reversion clause under which "unpaid . . . claims will revert to the defendant." *See* Newberg § 13:9. Second, the proposed notice is inadequate and misleading, and it fails to provide "the class with the best notice practicable under the circumstances." *Walter v. Hughes Commc'ns, Inc.*, No. 09-2136 SC, 2011 WL 2650711, at *16 (N.D. Cal. July 6, 2011). The proposed notice, on page one, states:

> Defendants have agreed to a settlement fund up to the amount of $290,000, including attorneys' fees and costs. The amount of the fund actually paid out by Defendants shall be determined by the number of class members who claim settlement funds. Amounts not claimed will be retained by Defendants.

This wrongfully suggests that the amount available to the noticed class member will be determined pro-rata "by the number of class members who claim settlement funds." While technically true—the total sum paid by Defendants to the class will vary with the number of claims, given the reversion clause—this statement suggests that the value of individual claims will depend on the number of claims submitted, which is not the case. Such vague language will no doubt deter claims, considering that the amounts available ($1,000 – $2,000) are not mentioned until page five of the notice after much droll recitation of administrative issues and boilerplate language. Should the next proposed settlement contain a similar scheme or comparable claim values, the amounts available must appear prominently on the first page of counsel's proposed notice.

Finally, the Court also notes that the parties have erred when assessing the reasonableness of the entire $290,000 "Settlement Fund." Instead they "must assess the value of the settlement

to the class," which in its present state involves $140,000 as a source of $1,000 to $2,000 payments. *RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). Likewise, "the reasonableness of the agreed-upon attorneys' fees for class counsel" will be assessed against the same. *Id.*

**SO ORDERED**

/s/ *Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge

Dated: January 12, 2017
Brooklyn, New York